164

'WILLIAM KATZ et al., as Copartners Doing Business as PUBLIC SERVICE GARAGE, Appellants-Respondents, *v.* STATE OF NEW YORK, Respondent-Appellant. (Claim No. 33282.)

Third Department, March 28, 1960.

*Levene & Gouldin* (*David Levene* of counsel), for appellants-respondents.

*Louis J. Lefkowitz, Attorney-General* (*Julius L. Sackman* and *Paxton Blair* of counsel), for respondent-appellant.

COON, J. This was a complete taking in fee for arterial highway purposes. (Highway Law, art. XII-B.) The Court of Claims awarded claimants the sum of $232,500 as the fair market value of the lands, buildings and improvements, plus the sum of $888.33 as the cost of moving and reinstalling at another location, a car lift, air lines and neon signs. The State originally cross-appealed from the entire judgment on the ground of excessiveness, but has now withdrawn its appeal except for the allowance of the sum of $888.33 above mentioned.

The property taken was extremely unusual because of its location, its size for that location, and the special installation thereon. It may be said that the property is located in the heart of the City of Binghamton, N. Y., being two blocks from the 100% retail business district. It has a total area of 139,250 square feet and has frontage on two streets. All of the experts agree that there is no other property so close to the center of the City of Binghamton with as large an area in single ownership. There were 11 buildings on the premises, all used in connection with claimants' business. The main garage building was approximately 60 feet by 132 feet, of steel and cinder block construction, with a clear span type of steel construction, five-inch concrete floor, two over-sized power-operated overhead doors, heating system, sprinkler system with 100 sprinkler heads, special electric wiring, and many other installations. There was a total of 3,416 square feet of concrete walks and driveways on the premises, and 1,709 square yards of black top paving. The property had a private fire hydrant system with approximately 750 feet of four-inch water mains under ground.

Claimants conducted a business on the premises known as "Public Service Garage" which included the sale of new trucks, buses, cars and trailers; purchase and sale of used cars and trucks; rental of cars and trucks; storage and parking of cars and trucks; operation of a complete garage, including complete parts department, paint shop and body shop, and a gasoline service station. Claimants' gross business at the premises in 1954, the year preceding the appropriation, amounted to $861,880.44. It is undisputed that the best use of the premises was the use to which it was being put by claimants. The record contains a detailed description of the property and improvements. The above brief and general description is merely to indicate that this was unusual property.

A construction engineer with excellent qualifications testified for claimants that the reconstruction cost of the buildings and improvements was $245,047.60, and deducting physical depreciation of $65,113.20, found a net value of $179,934.40. This witness and his staff made a detailed and thorough examination of all improvements, and the record contains sketches, dimensions, materials and breakdowns which tend to substantiate his estimates.

Claimants' two real estate experts valued the land over which the State had no easement (85,220 square feet) at $2.50 per square foot, and the land over which the State already had

a perpetual easement for flood control purposes (54,030 square feet) at 25¢ per square foot. Claimants offered evidence of comparable sales which averaged $5.22 per square foot. One of claimants' real estate experts placed the total fair market value of the land and improvements at $355,000, the other at $345,000. They gave detailed evidence giving consideration to the summation approach, capitalization of net rental value, and comparable sales, which tended to support their opinions as to fair market value of the whole. The record is clear that they did not, as the State urges, arrive at a fair market value figure by mere computation of any method of valuation, but merely considered, as they should, those figures in arriving at their opinions. (*Matter of Board of Water Supply of N. Y.*, 277 N. Y. 452; *Sparkill Realty Corp.* v. *State of New York*, 254 App. Div. 78, affd. 279 N. Y. 656.)

The experts for the State arrived at a total valuation of $181,100. The record indicates that they made a comparatively cursory inspection and examination of the premises and improvements. Their testimony was considerably weakened by admissions made on cross-examination. No clear foundation or factual support for the opinion valuation appears. A mere opinion without factual support is not entitled to great probative force. (*Matter of Reihl* v. *Town of Amherst*, 308 N. Y. 212; *McQuade* v. *Metropolitan St. Ry. Co.*, 84 App. Div. 637.)

We recognize the general rule that on a question of quantum appellate courts are reluctant to disturb the evaluation of the trial court. However, that rule is not without exceptions, and if the evaluation is clearly inadequate it is erroneous. Here the buildings and improvements were gone when the trial court viewed the premises, having been demolished immediately after the taking. Upon all the evidence we find that the award is inadequate, and conclude that the fair market value of the property appropriated was $300,000 on the date of the appropriation.

We find no sound legal basis for the allowance by the Court of Claims of the sum of $888.33 for the installation of equipment removed to other premises. It seems implicit from the fact that the equipment was not included in the valuation of the real estate and was removed, that it was personal property for which compensation may not be had. Claimants concede they are not entitled to compensation for personal property, but insist that is not what they are claiming. However, under the circumstances of this case, where there was a complete and permanent taking, claimants are entitled to the fair market value of the property taken, and nothing more.

The judgment should be modified by increasing the amount thereof to the sum of $300,000, with interest, and as so modified, affirmed, with costs to claimants.

BERGAN, P. J., GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Judgment modified, on the law and facts, by increasing the amount thereof to the sum of $300,000, with interest, and as so modified, affirmed, with costs to claimants.