KIMBERLY-CLARK CORPORATION, Appellant, *v.* POWER AUTHORITY OF THE STATE OF NEW YORK et al., Respondents.

Fourth Department, December 3, 1970.

*Runals, Broderick, Shoemaker, Rickert, Runals & Berrigan* (*Clarence R. Runals* of counsel), for appellant.

*Raichle, Banning, Weiss & Halpern* (*Salem G. Mansour* and *Joseph J. Mansour* of counsel), for respondents.

BASTOW, J.   This action arose out of the construction in 1959 by defendant Power Authority of the State of New York (Authority) of the so-called Niagara Power Project.   In the course thereof it was necessary to construct twin conduits to carry water from intake structures to be built upstream from the Falls of Niagara a distance of some 4½ miles to a generating plant to be constructed below the Falls.   The remaining defendants are Uhl, Hall & Rich (the engineers) and Merritt, Chapman & Scott Corporation (the contractor) both of whom were employed by the Authority.

In 1954 the engineers were retained by the Authority to prepare basic layouts, designs and other material preparatory to the Authority applying to the Federal Power Commission (Commission) for a license to divert waters from the Niagara River to be used for generation of electric power.   This initial work mandated, among other things, the selection of one of three methods of conducting water from the intake structure to the generating plant.

Parenthetically, it should be stated that one of plaintiff's causes of action is based on common-law negligence in that all defendants, including the contractor which constructed the conduits, were actively negligent in the choice of the method eventually used.   The three possible types of waterways were (1) an open cut canal; (2) tunnels and (3) cut and cover conduits.   A cut and cover conduit (the method eventually selected and used) is a waterway constructed by surface excavation of a deep cut in the sub-surface wherein concrete conduits are built, thereafter covered with earth and the entire excavation refilled.   The use of tunnels, which plaintiff's experts opined would have been the proper method, would have been accomplished by driving such tunnels some 200 feet below ground level without disturbing the land surface.

It will be helpful here to digress and state certain geologic facts that had an important bearing on the choice of a conduit. Upon the trial, which lasted for six weeks and produced some

4,400 pages of testimony and 250 exhibits, much evidence was presented upon the basic geology of the area. There appears to be no dispute that the upper layer of rock in the Niagara geologic province is Lockport or Guelph dolomite. This is a hard, resistant, horizontally stratified rock. In the area of the conduits it is about 150 feet deep and vertically jointed. It is subject to a phenomena known as "rock squeeze", which is a term used to describe a form of lateral compressive stress which manifests itself primarily when excavations are made in the rock strata. In other words, when a cut occurs in the surface, the rock on both sides of the cut tends to move inward toward the open space.

The experts for the respective parties apparently agreed that some movement occurred at or near the face of the cut for the conduits but the hard core factual issue upon which there was strenuous disagreement was the distance into the land mass surrounding the conduits that the movement carried. This became a crucial issue because plaintiff sought to recover damages in excess of five million dollars for alleged injuries to 25 nearby structures owned by it. These buildings were a distance from the easterly inside surface of Conduit No. 1 to the westerly side of each structure varying from 277 feet (Mill No. 1, Building No. 34) to 1018 feet (Mill No. 2, Building No. 9).

Eventually, as stated, the cut and cover conduit method was selected and in August of 1956 the Authority filed an application for a license with the Commission. Suffice it to say that during the following years there were numerous hearings, various municipalities intervened and urged the partial use of tunnels and other variations in the proposed plan. Finally, in January of 1958 the Commission issued a license to the Authority to construct cut and cover waterways, upon stated conditions, one of which was that the Authority should be liable for all damages occasioned to property of others by the construction of the project works.

It is this condition in the license upon which plaintiff in part bases its sixth cause of action. It contends that in the exercise of ordinary care the Authority should have refused to accept the license conditioned, as it was, upon the use of cut and cover conduits. Such refusal was mandated, it is further contended, because the Authority could reasonably have foreseen that the use of such conduits would cause damage to plaintiff's buildings as the result of rock movement.

Plaintiff's amended complaint contained six causes of action. Two of these (the third and fourth) were withdrawn by plaintiff at the close of its affirmative case. The four remaining may be

summarized as follows: First cause — against all defendants based upon violation of statutory duty to preserve and protect plaintiff's property. Dismissed as to all defendants as a matter of law at the close of plaintiff's case. Second cause — against all defendants based on negligence in the design and construction of the conduits. Dismissed as to all defendants, except the Authority, as a matter of law at the close of plaintiff's case. Fifth cause — against all defendants for unreasonable interference with plaintiff's quiet and peaceful enjoyment of its land. Dismissed as to all defendants, except the Authority, as a matter of law, at the close of plaintiff's case. Sixth cause — against the Authority only based on liability created by subdivision (c) of section 10 of the Federal Power Act (U. S. Code, tit. 16, § 802, subd. [c]) and the described license issued by the Commission and accepted by the Authority.

These three remaining causes (second, fifth and sixth) were submitted to the jury with instructions to return a separate verdict as to each cause of action. The jury found no cause of action as to each.

We conclude that the first cause of action was properly dismissed as to all defendants. This cause is based on an ordinance of the City of Niagara Falls mandating affirmative action on one making an excavation "to prevent the adjoining earth from caving in" and if such person is granted the necessary license to enter upon adjoining land then the further duty is imposed to "preserve and protect from injury every building, the safety of which may be affected by such excavation." The duty imposed by a statute such as this one is absolute regardless of the presence or absence of negligence (5 Powell, Real Property, § 702, p. 309).

The primary object of this, and similar statutes, is to cast upon the party making an excavation on his land the risk of injury resulting therefrom to the wall of an adjoining owner and the burden of protecting against it. (*Dorrity* v. *Rapp,* 72 N. Y. 307, 311.) Fairly construed, the enactment applies to structures near to or in close proximity to the excavation, as well as those touching the excavated premises (*Baxter* v. *York Realty Co.,* 128 App. Div. 79, affd. 198 N. Y. 521) or "to any land within the natural zone of support" (*Gordon* v. *Automobile Club of Amer.,* 101 Misc. 724, 727, affd. on opn. below 180 App. Div. 927).

We conclude that plaintiff's structures did not come within these requirements. The nearest building was roughly 300 feet from the excavation while most were 500 to 1000 feet therefrom. It follows that this cause of action was properly dismissed.

It is plaintiff's further contention that the verdicts were contrary to the proof. The jury, as stated, rendered a separate verdict as to the second, fifth and sixth causes of action. This followed a lucid and comprehensive charge by the trial court. While plaintiff's right to damages may well have been based on any one of these three causes of action, there was one crucial and decisive factual issue the resolution of which in plaintiff's favor was common and mandatory to a recovery under any one of the three causes. This issue was whether or not the construction of the conduits by the Authority caused movement of rock underneath appellant's structures resulting in damage to them. The jury was so instructed.

In resolving this issue the jury was presented with the diametrically opposed opinions of the respective experts called by plaintiff and the Authority. The testimony of these eight experts — four on each side of the case — covers hundreds of pages in the record. A full discussion of the facts upon which the divergent opinions were based would inordinately and unnecessarily extend the length of this opinion. The diverse views may be briefly summarized.

All of the eight experts apparently were in agreement that there was some rock movement at or near the face of the cuts for the conduits. The disagreement was as to the extent thereof. More specifically, there again appeared to be general agreement that the greatest movement would be at the face of the cut. The disagreement was whether or not the movement would extend 277 to 1000 feet with resulting damage to plaintiff's buildings. Plaintiff's experts opined that it would. The Authority's experts expressed contrary opinions.

It is familiar law that a jury verdict should be set aside only where it seems palpably wrong and it can be plainly seen that the preponderance is so great that the jury could not have reached their conclusion upon any fair interpretation of the evidence. (4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4404.09.) The record fails to disclose any evidence that the verdicts were manifestly a miscarriage of justice, or that the jury acted mistakenly, capriciously or arbitrarily or that the verdicts were tainted with prejudice, passion or corruption. In sum, there was no basis that would have permitted the Trial Justice to have substituted his judgment for that of the jury (*Gutin* v. *Mascali & Sons*, 13 A D 2d 817, affd. 11 N Y 2d 97). The trial court properly denied the motion to set aside the verdict on the ground that it was contrary to the evidence.

We find no merit to appellant's contention that a new trial should be granted because of prejudicial remarks made by the

Trial Judge. All of these (six in number) related in one fashion or another to the experts and their qualifications. Significantly, no objection was taken to any of the remarks. If any or all of this resulted in temporary harm to plaintiff's case, it was erased from the minds of the jurors by the full instructions in the charge on the issue of the credibility of the experts in contradistinction to their qualifications. On the latter subject the jury was told by the court in its charge that " I think we have been privileged to hear some of the most eminent geologists, geophysicists, professors, teachers in the United States on this subject."

Appellant's next assignment of error is that the trial court failed to comply with the request of the jury for the reading of specific portions of the testimony and committed reversible error in the conduct of the proceedings at that time. During the second day of its deliberations the jury requested in writing that specific testimony of named witnesses be read. This testimony was primarily that of six of the experts (three for each side) concerning the distance back from the cut that rock moved.

The court at the outset made it clear that the case was complete and that it wanted no discussion or conversation from respective counsel. The reading of this testimony covers some 80 pages in the record. During this period the court repeatedly asked the jury if what had been read satisfied their request and received affirmative replies. Moreover, the jury was not hesitant to correct the court, make additional requests and suggestions or to interrupt the reading.

The basis of appellant's present contention is that the court failed to have read to the jury four pages of the redirect testimony of one expert and one page of the cross-examination of another witness. After the jury retired counsel for plaintiff excepted to this stated omission.

We have examined the testimony that was read to the jury as well as the five pages of testimony that the court stenographers apparently failed to find. We conclude that the omission was not so vital as to mandate a new trial. Testimony similar to that omitted, appeared elsewhere in the testimony of both witnesses and this was read to the jury. It has been written in a different context that " Errors are almost inevitable in any trial, improprieties almost unavoidable, but the presence of one or the other furnishes no automatic signal for reversal and retrial." (*People* v. *Kingston,* 8 N Y 2d 384, 387). A party is entitled to a fair trial but not a perfect one (*Lutwak* v. *United States,* 344 U. S. 604, 619).

Next, appellant contends that the trial court erred in dismissing (1) the second cause of action (negligence in design and

construction of conduits) as to defendant, Uhl, Hall & Rich and (2) fifth cause (interference with quiet enjoyment of property) as to that defendant and the codefendant, Merritt, Chapman & Scott Corporation. There is merit to the contention.

A factual issue was presented as to the claimed negligence of the engineers in the selection and design of the conduits and the location thereof. There was proof that they recommended to the Authority the use of the so-called cut and cover type of waterway. As an independent contractor the firm might have been found jointly liable with the Authority which made the final selection (28 N. Y. Jur., Independent Contractors, § 40). Considering, as we must, the facts most favorable to plaintiff and giving to it the benefit of every favorable inference which can be reasonably drawn therefrom (*De Wald* v. *Seidenberg,* 297 N. Y. 335, 336–337) the conclusion is irresistible that this cause of action was improperly dismissed as to the engineers.

In our opinion the fifth cause of action also was improperly dismissed as to both the engineers and contractor. This cause is based on the common-law right to lateral support of adjoining land (see, generally, 5 Powell, Real Property, § 700). The trial court implicitly recognized the applicable legal principles by denying the motion to dismiss the cause as to the Authority but for some inexplicable reason granted the motion as to the engineers and contractor. Liability for injury to lateral support of land may be " enforced against an owner, his agent or licensee, or any other person by whom the injury was caused." (*Gordon* v. *Automobile Club of America,* 101 Misc. 724, 727, affd. on opn. below 180 App. Div. 927, *supra*; 1 Am. Jur. 2d, Adjoining Landowners, § 72.)

In this posture of the case a new trial would normally be mandated as to defendant, Uhl, Hall & Rich on both causes of action and defendant, Merritt, Chapman & Scott Corporation as to the fifth cause of action. Upon this appeal they contend, however, that since plaintiff failed to establish that the excavation caused any damage to its structures, no right of recovery could exist as against the remaining defendants on any cause of action. While not so expressed, we assume that the defendants, other than the Authority, are invoking the doctrine of collateral estoppel which is first, " an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling " (*Schwartz* v. *Public Administrator,* 24 N Y 2d 65, 71). (See, also, *B. R. DeWitt, Inc.* v. *Hall,* 19 N Y 2d 141, 148; *Hinchey* v.

*Sellers,* 7 N Y 2d 287, 293; *Albero* v. *State of New York,* 31 A D 2d 694, affd. 26 N Y 2d 630.)

It is recognized that ordinarily such a defense is an affirmative one to be pleaded. (CPLR 3018, subd. [b].) Rigid legal procedure would dictate that a new trial of the two causes of action be directed as to one or both of the defendants, other than the Authority. Thereafter, those defendants would amend their answers to assert (what they presently contend) that plaintiff is collaterally estopped and presumably these defendants would move to dismiss the causes (CPLR 3211, subd. [a], par. 5). Special Term would then be presented with the identical issue now before us. All of this, we believe, would exalt form over substance.

We conclude that plaintiff comes within '' the sound principle that, where it can be fairly said that a party has had a full opportunity to litigate a particular issue, he cannot reasonably demand a second one '' (*Schwartz* v. *Public Administrator, supra,* p. 69). The basic and crucial issue here litigated and resolved by the jury verdicts adversely to plaintiff was whether the rock movements caused by the cuts for the conduits resulted in damage to plaintiff's structures.

Plaintiff should not be permitted to relitigate this issue unless it can be found that it was actually prejudiced by its inability to have the fifth cause of action submitted to the jury as against all defendants, and the second cause so submitted as to two of them. It is recognized that the engineers were those to whom the Authority originally turned for advice and guidance in the selection of a waterway and it might be contended that plaintiff was prejudiced to have them removed from the case during the progress of the trial. The court, however, in its charge discussed the subject at some length and concluded with the admonition that the jury '' should draw no inferences whatsoever concerning either liability or the lack of liability on the part of the Power Authority because now they stand as the sole defendant.'' We assume the instruction was followed and find no prejudice to plaintiff on this ground.

Lastly, there remains for consideration the earlier disagreement between the parties as to the form and content of the appendix on appeal as to which we heretofore reserved decision (34 A D 2d 1095). Thereafter, in accordance with our memorandum respondents prepared a separate appendix of some 400 pages. This contained additional parts of the record which respondents considered necessary for consideration by this court of the questions involved (CPLR 5528, subd. [b]). In a case of this complexity we cannot say that the material contained in

respondents' appendix was not relevant to the issues presented. Significantly, appellant's appendix contains a portion of the testimony of the two witnesses whose further testimony fills a major portion of respondents' appendix. Respondents should be permitted to include in their disbursements the cost of preparing this supplemental appendix.

Finally, we are confronted with the alphabetical arrangement of appellant's appendix. Instead of printing the testimony of witnesses in the order in which they were called at trial, with an index listing the witnesses alphabetically, appellant arranged the testimony in its appendix as follows: witnesses for appellant in alphabetical order, witnesses for respondent in alphabetical order. Thus, the testimony of one of the first witnesses, as reproduced in the appendix, is found at page 2492 of the stenographer's minutes.

An appellate court should not be subjected to the task of untangling and mastering the facts from an incoherent record. Accordingly, an appellant has the duty to present the issues in a clear and concise manner, and a record which is not arranged in a chronological or other logical sequence may be held to violate the rules of the CPLR, thereby subjecting appellant to appropriate sanctions (cf. *Becannon* v. *Smith,* 31 A D 2d 810; *Lo Gerfo* v. *Lo Gerfo,* 30 A D 2d 156, 157).

The alphabetical arrangement of appellant's appendix, although systematic, can hardly be described as logical. The arrangement tends to distort the record by causing testimony to appear in an illogical sequence. The court finds such a method of arrangement inadequate and unacceptable.

The judgment and order should be affirmed.

DEL VECCHIO, J. P., WITMER, MOULE and HENRY, JJ., concur.

Judgment and order unanimously affirmed with costs.