AMSTERDAM URBAN RENEWAL AGENCY, Appellant, v LAUREN T. BARNETT, Respondent. (Action No. 1.) AMSTERDAM URBAN RENEWAL AGENCY, Appellant, v LAUREN T. BARNETT, Respondent. (Action No. 2.)—Appeal from an order of the Supreme Court at Special Term, entered May 19, 1977 in Montgomery County, which confirmed a report of Commissioners of Appraisal. The present actions involve two parcels of land located in the City of Amsterdam which were condemned by appellant Amsterdam Urban

Renewal Agency. The first parcel at 48 East Main Street was improved with a three-story brick building and had a frontage of 19.5 feet on East Main Street and a depth of 88 plus or minus feet. The second parcel was immediately behind a right of way in the rear of the first parcel and had a frontage of 62 feet on Chuctanunda Street, 190 feet on Federal Street and was used as an attendant-operated parking lot. Defendant Barnett had contracted to purchase both parcels on December 9, 1968 for $25,000, with $18,000 allocated to the improved East Main Street parcel. Title to East Main Street passed on January 3, 1969, but, as agreed, title to the parking lot would not pass until December 3, 1973, some five years after the date of the contract. Urban Renewal condemned East Main Street on November 20, 1970 and the parking lot parcel on May 18, 1971.[1] Urban Renewal's appraiser valued the properties as separate parcels, appraising the East Main Street property at $21,000 and the parking lot at $15,300. Defendant Barnett's appraiser valued the properties as one parcel, concluding that they were worth $95,000. The commissioners valued the parcels separately, awarding $42,750 for East Main Street and $33,290.25 for the parking lot. Special Term confirmed the award, holding that the testimony of both experts was unacceptable in part, but that the commissioners were fully familiar with all the factors relating to the market value of the subject parcels. The courts will reject a determination of Commissioners of Appraisal only for irregularity in the proceedings, or if based on an erroneous principle of law, or, if it "shocks not only one's sense of justice, but one's conscience" *(Matter of Huie [Fletcher—City of New York], 2 NY2d 168, 171; Condemnation Law, § 15).* Absent irregularity and errors of law, this appeal relates solely to the monetary amounts of the awards measured against a sense of justice and fairness. Both experts agreed that the highest and best use of the East Main Street property was for commercial retail use. The record reveals no range of testimony as to the value of this property in that defendant's appraiser valued the parcels as a unit and Urban Renewal's appraiser valued them separately. Urban Renewal's contention of excessiveness must rest mainly on the contract price of $25,000 set in December, 1968, $18,000 of which was allocated to the East Main Street parcel. The probative value of its expert's testimony with respect to four comparable sales was seriously eroded by the arbitrary adjustments both upward and downward to bring each comparable sale within the range of $21,000. While a purchase price set in the course of an arm's length transaction of recent vintage is evidence of the "highest rank" to determine true value at that time *(Plaza Hotel Assoc. v Wellington Assoc., 37 NY2d 273, 277),* and the burden of proof is on the party seeking to negate the use of such purchase price *(Shapiro v State of New York, 61 AD2d 852),* such proof, while highly probative of market value, is not determinative. The defendant points out that the contract of purchase was two and one-half years prior to the taking, that conditions in the area have improved and that he was offered $35,000 for the parking lot alone.[2] Beyond these conclusory claims there is absolutely no evidence to support defendant's expert's testimony that the subject property as assembled was worth $10 per square foot. The real estate sales relied upon by defendant's expert are not detailed in his report,

1. Since title to the parking lot had not passed to defendant Barnett as of the date of condemnation, the owner released her interest for $7,000 and condemnation proceeded against Barnett, the equitable owner, pursuant to the contract of December 9, 1968.

2. Evidence of offer of $35,000 was excluded as hearsay.

so we are confined to one comparable sale, which, while located in the immediate area of the East Main Street parcel, sold for $40,000 or $28.12 per square foot. This price, apparently supportive of the commissioners' conclusion that the parcel was worth $42,750, becomes highly suspect in the absence of any explanation or attempt to adjust by defendant's expert. His statement that the square foot value of the comparable of $28.12 "indicated the highest square foot value of property in the City of Amsterdam" is gratuitous and tantamount to an opinion without factual support. It is probatively valueless (Katz v State of New York, 10 AD2d 164, 166). Further, examination of the record reveals that the State Bank of Albany was a preferred sponsor for development of the Urban Renewal project, having already acquired two parcels surrounding this comparable (known as the Sweeney Estate property), and purchased the Sweeney Estate parcel to complete an assemblage for a new bank complex. Also, this $40,000 parcel was improved with two modern structures, both occupied by going business concerns. In sum, Urban Renewal valued the East Main Street parcel at $21,000, relying principally on the contract price set in December, 1968. Defendant Barnett offered no explanation of his use of $10 per square foot to arrive at his gross figure of $95,000 for the two parcels assembled, and his attempt to use the Sweeney Estate property as a comparable was valueless both because he failed to adjust the price and for the unique conditions surrounding that sale. Consequently, we conclude that the award for the East Main Street parcel of $42,750, representing an 138% appreciation in value over the contract price in 1968, must be vacated as shocking to one's sense of justice and conscience (Matter of Huie [Fletcher—City of New York], supra). Similarly, the commissioners' evaluation of the parking lot at $33,290.25 must be vacated. Even conceding that title to the parking lot did not pass to defendant Barnett until December, 1973, thereby permitting Barnett's seller to retain the annual revenues from the parking lot for a period of about five years, an appreciation in value over the 1968 contract price of $7,000 or about 370% is unconscionable. We, therefore, conclude that there is an absence of competent evidence supportive of the awards as confirmed (County of Sullivan v Emden, 59 AD2d 957, 958). Order reversed, on the law and the facts, without costs, awards vacated and matter remitted to Supreme Court for remittal to the same or new Commissioners of Appraisal for further proceedings. Mahoney, P. J., Greenblott, Sweeney, Kane and Staley, Jr., JJ., concur.