OFFICE PARK CORPORATION, Respondent, v COUNTY OF ONON-
DAGA, Appellant. (Appeal Nos. 1 and 2.)

CARL M. BROOKMAN et al., Respondents, v COUNTY OF ONON-
DAGA, Appellant. (Appeal Nos. 3 and 4.)

MULTI-CITY PROPERTIES, INC., Respondent, v COUNTY OF ONON-
DAGA, Appellant. (Appeal Nos. 5 and 6.)

CONKLIN, LABS & BEBEE, INC., Respondent, v COUNTY OF
ONONDAGA, Appellant. (Appeal Nos. 7 and 8.)

Fourth Department, November 3, 1978

## APPEARANCES OF COUNSEL

*Ralph I. Greenhouse, County Attorney (Peter Eriksen* of counsel), for appellant.

*Byrne & Costello, P. C. (Matthew V. Byrne, Jr.,* of counsel), for respondents.

## OPINION OF THE COURT

CARDAMONE, J.

In 1974 and 1975 four different plaintiffs' properties in an area known as General Motors Circle in the Town of De Witt, Onondaga County, were flooded, resulting in eight actions (a separate plaintiffs' suit for each flood) against Onondaga County for negligence. At a bifurcated jury trial favorable verdicts in all the actions were obtained by the four plaintiffs. From the resultant eight judgments, holding it liable for damages, Onondaga County appeals.

The real property owned by plaintiffs, Office Park Corporation, Carl and Lillian Brookman, Multi-City Properties, Inc., and Conklin, Labs & Bebee, Inc., were first flooded on July 3-4, 1974 and again on September 25-26, 1975 during heavy rainstorms at the time. The flooding occurred when Ley Creek overflowed its banks. Ley Creek is a natural waterway whose watershed contains 29 square miles and discharges into Onondaga Lake. Its drainage basin includes portions of the Town of De Witt and the Village of East Syracuse. Its five major tributaries are: Bear Trap Creek, North Branch of Ley Creek, South Branch of Ley Creek, Sanders Creek, and Teall Brook. Ley Creek and its branches have a history of flooding, including major floods in May, 1969 and June, 1972.

Onondaga County had previously commissioned a local engineering firm to make recommendations on Ley Creek and its tributaries. In 1969 it established the Bear Trap-Ley Creek Drainage District and authorized the construction of improvements which included the deepening and widening of Ley Creek. Plaintiffs' properties are bounded on the north by the New York State Thruway, on the south by Route 298 and on the east by Town Line Road. The North Branch and South Branch join the Main Branch of Ley Creek immediately northeast of plaintiffs' properties and the Main Branch crosses just north of it. Plaintiffs' properties were included in the drainage district, and the County of Onondaga, through the district, imposed special taxes against plaintiffs' properties and all other properties located within the district.

Thereafter, the county entered into a series of contracts to perform the work, commencing at Onondaga Lake and working upstream in Ley Creek. Contract Nos. 1, 2 and 3 com-

pleted work to a point 5,000 feet west of Town Line Road. Later, instead of continuing with the clearing of Ley Creek from the eastern terminus of Contract No. 3, however, the county by-passed the General Motors Circle Area and went upstream to the residential area of East Syracuse with Contract No. 4.

In July, 1972 the local firm of Calocerinos and Spina reported to the County Legislature that additional funds were needed to complete the work previously authorized. Their report recommended an additional $550,000 to complete the phase I improvements (Contract Nos. 1, 2 & 3), all of which work was downstream and to perform minor work needed at Teall Brook which was upstream from plaintiffs' properties. The Legislature authorized the additional funds to complete the phase I improvements which included the "clearing of trees and vegetation and the acquisition of necessary rights-of-way from Onondaga Lake to Town Line Road".

In May, 1974 all the phase I work, except the clearing of trees and vegetation, was completed. At that time the engineers and the Commissioner of Drainage and Sanitation reported to the County Legislature that while the improvements completed had had some effect in alleviating potential flooding at General Motors Circle (plaintiffs' properties) a detailed survey and study would be needed to determine whether an economically feasible solution to this area's problems was feasible, with the likelihood of major construction. That study resulted in the approval by the County Legislature of Contract No. 8 in January, 1976. Under that contract the entire unimproved balance of the Main Branch of Ley Creek was deepened and widened from a point 5,500 feet west of Town Line Road, easterly to Town Line Road, across the northern part of plaintiffs' properties, then south into the South Branch to Route 298. The sum of $880,000 was authorized for the project.

The floods with which we are concerned occurred July 3-4, 1974, and September 25-26, 1976, after the study of General Motors Circle was ordered, but before construction had begun under Contract No. 8. Meanwhile, the county performed the minor channel work in Teall Brook, upstream from plaintiffs' property and commencing in August, 1974 the county deepened and widened the channel of the South Branch upstream to alleviate flooding conditions in the heavily residential East Syracuse area.

It appears that the rainfall during the 1974 flood amounted to 4.25 inches and for 1975, 4.95 inches. The experts at trial agreed that while more rain fell in 1975, the 1974 storm was more severe and the rainfall was more intense, i.e., 3.81 inches of rain fell in seven hours. Plaintiffs' Building No. 113 was flooded five inches deep in 1974 and the same building was flooded to a depth of 13 inches in 1975.

At the trial plaintiffs' expert engineer C. William Dunn testified that the channel of Ley Creek immediately west of Town Line Road Bridge (just north of General Motors Circle) was so constricted as to allow only 155 cubic feet per second of water to pass. Dunn also testified that in his opinion the floods of 1974 and 1975 would not have occurred had the authorized improvements been undertaken and completed as of July 1, 1974. In support of this opinion he described the condition of the creek as being "overgrown with brush. There was trees lying across it and it was silted in". He also noted that the county had applied to the State Department of Environmental Conservation for a permit to remove "old trees, brush, stumps and debris within 50 feet of either side of the stream line". Dunn continued that in his opinion the effect of the county's leaving the channels upstream from General Motors Circle (i.e., at Teall Brook and Sander's Creek) was to increase the flow of water downstream in Ley Creek and that there would have been more water at plaintiffs' property as a result. He stated that it is the generally accepted engineering method to start at the downstream outlets of a stream and to make improvements in an upstream direction.

On cross-examination Mr. Dunn admitted that he assumed other facts not contained in the hypothetical question when he was asked to answer whether or not the floods would have occurred if the improvements approved had been completed as of July, 1974. He admitted that, in fact, he "didn't know" whether plaintiffs' properties would still have flooded and that he was not at all sure whether clearing the vegetation (the only improvement not completed in July, 1974) would have had any effect.

The defendant county's experts were Emmanuel Calocerinos, one of the partners in the firm of Calocerinos and Spina retained by Onondaga County to help establish this drainage district, and John J. Hennigan, Jr., Commissioner of the Department of Drainage and Sanitation for the county.

Mr. Calocerinos testified that the work done upstream on

Teall Brook was done in the fall of 1973 and early spring of 1974. He stated that $70,000 was spent to replace a collapsed culvert and an additional $70,000 was spent to eliminate a bend in Teall Brook that was causing a health hazard. Regarding this work Calocerinos was asked whether the purpose of this work was to make the water go downstream quicker and he responded "no, the water would go down there anyway". He further stated that it was never intended under phase I work to dredge and to widen and deepen the channel of Ley Creek westward from Town Line Road, but only to clear this area after the dredging downstream had been completed. Concerning the effect of the clearing of trees and vegetation, Calocerinos testified that: "If the trees and vegetation had been cleared from that section of Town Line Road westward to the terminus of Contract 3, it would have had no effect on the flooding in 1974". Finally, Calocerinos agreed that there was a general plan that the work should start at Onondaga Lake and continue upstream eastwardly. On cross-examination he admitted that the work performed under Contracts 1, 2 and 3 was downstream and that he "jumped the General Motors area of that creek" and went upstream knowing that there was a risk involved in doing that. He conceded that he realized that the risk was that more water would come down in greater velocity downstream to an unimproved area of the stream and that, in fact, the improvements undertaken after the 1974 flood to alleviate the flooding in an entirely residential area of East Syracuse did increase the flow in General Motors Circle eight tenths of 1% to 1,101 cubic feet per second. Witness Hennigan agreed that "sound engineering practice" was to start at the downstream end of the drainage channel and work upstream in stages. He knew at the time that the East Syracuse work was undertaken prior to 1975 (but after serious residential flooding in 1974) that it might have adverse effects downstream at General Motors Circle.

The jury found the county liable for the 1974 flood on account of its failure to clear trees and vegetation from Ley Creek in the area west of Town Line Bridge and by the work done at Teall Brook upstream which it found resulted in additional flow in Ley Creek. For the 1975 flood it made similar findings to those noted and also found liability because the county's work upstream in the East Syracuse area increased the flow in Ley Creek.

█ It has been long and consistently held in New York that

when a municipality is acting in its sovereign capacity, it is not liable in damages for a failure to furnish effective protection to a particular individual to whom it has assumed no special duty *(Moch Co. v Rensselaer Water Co.,* 247 NY 160; *Steitz v City of Beacon,* 295 NY 51; *Murrain v Wilson Line,* 270 App Div 372, affd 296 NY 845). There must be an affirmative act on the part of the municipality which either causes the injury or sets in motion a chain of events leading to the injury before liability can be imposed on a municipality performing a governmental function *(Schuster v City of New York,* 5 NY2d 75; *Dunham v Village of Canisteo,* 303 NY 498).

It is also well settled that a municipal corporation is not liable for failure to restrain waters between banks of a stream or to keep a channel free from obstructions it did not cause *(O'Donnell v City of Syracuse,* 184 NY 1; *Coonley v City of Albany,* 132 NY 145; *Seaman v The Mayor,* 80 NY 239). Thus absent any special duty owed by the County of Onondaga to plaintiffs, it cannot be held liable for failing to provide adequate flood protection to plaintiffs. We find no special duty was owed in this case. The plaintiffs were not entitled to rely on the county's plan and authorization of funds to clear trees and vegetation from Ley Creek, since a municipality acting in a governmental capacity retains the discretion to change its plans at any time during the course of the project *(Urquhart v City of Ogdensburg,* 91 NY 67, 71). Nor did the creation of the Ley Creek Drainage District, which included plaintiffs' properties, create a special duty on the part of the county owing to plaintiffs *(Tuthill v City of Rochester,* 32 AD2d 873, affd 27 NY2d 558). Plaintiffs, therefore, being unable to demonstrate any special duty that the county has assumed towards them, may not hold it liable for failure to clear the trees and vegetation in Ley Creek in the area near plaintiffs' property. However, while a municipality has no duty to restrain waters between banks of a stream or to keep a channel free of obstructions it did not cause, a municipality may be held liable where it undertakes to control drainage and in doing so casts water on private lands *(Seifert v City of Brooklyn,* 101 NY 136, 145-146; *Byrnes v City of Cohoes,* 67 NY 204, 207; *Musumeci v State of New York,* 43 AD2d 288, mot for lv to app den 34 NY2d 517). The distinction arises between the immunity granted to a municipality in its lawful exercise of sovereign power in the designing and planning of a drainage district so as to prevent flooding, and the liability imposed

upon it where injury is occasioned because an improper mode, means or method was employed in carrying the plan into execution *(Seifert v City of Brooklyn, supra,* p 146).

■ With respect to the 1974 flood, the only evidence offered by plaintiffs as to the effect or impact of the county's work in Teall Brook is their expert's opinion that the impact of the improvements upstream at Teall Brook and in East Syracuse would have been to increase the flow of water downstream in Ley Creek near plaintiffs' property. This opinion is based merely on speculation, however, since the expert admitted on cross-examination that when offering his opinion he failed to compute or take into account the following factors: (1) the amount of increase of water downstream; (2) the area which drains into plaintiffs' area from upstream; (3) the effect of barriers between Teall Brook and the plaintiffs' property; or (4) the amount of flooding which would have been prevented. Where an expert's opinion is wholly speculative (i.e., there is no proof of the existence of a single fact in the case upon which the theories of the expert were based), the expert's opinion is not entitled to probative force *(Katz v State of New York,* 10 AD2d 164). Further, when the only evidence to support a finding made by the trier of fact is the speculative opinion of an expert the claim should be dismissed because the evidence is insufficient *(Verni v State of New York,* 31 AD2d 727; *Matter of Riehl v Town of Amherst,* 308 NY 212, 216-217).

In the instant case there is no evidence in the record as to the impact of the work in Teall Brook to support the purely speculative opinion of plaintiffs' expert. Indeed, the only competent testimony concerning Teall Brook was provided by defendant's expert who said that "some" work was done by the county in Teall Brook in September and October, 1973 and in April, 1974 and by engineer Calocerinos who testified that $70,000 was spent on Teall Brook to replace a collapsed culvert, another $70,000 was spent to eliminate a bend in the brook, and $15,000 was spent to clear a channel. Neither of these witnesses, however, nor any of the other witnesses, testified as to the amount of increase of water downstream at plaintiffs' property as a result of the improvements on Teall Brook. Significantly, the jury during its deliberations requested exhibits concerning the work in Teall Brook, but there were none, and there was virtually no testimony to answer the jury's questions.

■ The verdict with respect to the 1974 flood must be reversed, since there is insufficient evidence to support the jury's findings with respect to increased flow in Ley Creek near plaintiffs' properties as the result of work performed upstream on Teall Brook *(Cassano v Hagstrom, 5 NY2d 643, 646; Stracher v Corning Glass Works, 39 AD2d 560).* Similarly, there is no proof whatever in the record to support the jury's finding that the county's failure to clear brush and vegetation increased flow in Ley Creek. We conclude, as we must, that it can be plainly seen that the preponderance of the evidence in favor of the defendant on these issues respecting the 1974 flood is so great that the jury could not have reached its conclusion upon any fair interpretation of the evidence *(Kimberly-Clark Corp. v Power Auth. of State of N. Y.,* 35 AD2d 330, 335).

■ Turning now to the 1975 flood, the proof in the record is sufficient to support the jury's finding and judgment that the county was negligent when it performed work upstream at East Syracuse and that such work increased the flow of water into Ley Creek to such a degree that it was the proximate cause of the flooding at plaintiffs' properties.

At the outset the record contains Dunn's expert opinion that the county's work at East Syracuse caused an increase of flow downstream that led to the flooding of plaintiffs' properties in 1975. Unlike Mr. Dunn's earlier opinion concerning the impact of the county's work at Teall Brook, his view concerning the effect of the East Syracuse work was supported by his own factual records, introduced into evidence and from which he testified. Defendant's experts, engineers John Hennigan and Emmanuel Calocerinos, both testified that the impact of the work upstream at East Syracuse was to increase the flow of water downstream at plaintiff's property by eight tenths of 1% or from 1,092 cubic feet per second to 1,101 cubic feet per second. The record also reveals that the 1975 flooding of plaintiffs' properties was of greater magnitude (13") than that which occurred on the same premises in 1974 (5") although the intensity of the rainfall was more severe during 1974. From all this evidence it can reasonably be concluded that the improvements in East Syracuse were a substantial factor in contributing to the flooding that occurred in 1975. Finally, the record contains the expert testimony of all the experts who testified that it was not sound engineering practice for the county to "jump" one area and do major work upstream

before it completed all the work downstream from it. Thus, we conclude that the jury's verdict with respect to the 1975 flood should not be disturbed.

The issues of contributory negligence and comparative negligence for the 1974 and 1975 flood respectively were fairly presented by the trial court to the jury as issues of fact. We have reviewed the other contentions raised by appellant county and find them to be without merit.

Accordingly, the four judgments arising from the 1974 flood should be reversed and the complaints dismissed; the four judgments resulting from the 1975 flood should be affirmed.

MOULE, J. P., DILLON, HANCOCK, JR., and WITMER, JJ., concur.

Judgment in Appeal No. 1 unanimously reversed, on the law and facts, without costs, and complaint dismissed.

Judgment in Appeal No. 2 unanimously affirmed, with costs.

Judgment in Appeal No. 3 unanimously reversed, on the law and facts, without costs, and complaint dismissed.

Judgment in Appeal No. 4 unanimously affirmed, with costs.

Judgment in Appeal No. 5 unanimously reversed, on the law and facts, without costs, and complaint dismissed.

Judgment in Appeal No. 6 unanimously affirmed, with costs.

Judgment in Appeal No. 7 unanimously reversed, on the law and facts, without costs, and complaint dismissed.

Judgment in Appeal No. 8 unanimously affirmed, with costs.