Tom S. BRUCE, Plaintiff,

v.

C. Daniel RIDDLE, I. H. Gibson, Mike Fair, Melvin Pace, John L. Bauer, W. Bentley Hines, Johnnie M. Smith, W. Shannon Linning, Larry H. McCalla, Marshall L. Cason, J. Harlon Riggins, W. B. Bennett, Charles F. Styles, and Clyde E. Morgan, individually and as members of the Greenville County Council and Greenville County, Defendants.

Civ. A. No. 78–1966.

United States District Court,
D. South Carolina,
Greenville Division.

Feb. 5, 1979.

A. Camden Lewis, Columbia, S. C., for plaintiff.

J. D. Todd, Jr., Mark R. Holmes, Greenville, S. C., for defendants.

D. Michael Parham, Abrams, Bowen, Robertson, Tapp & Parham, Joseph H. Earle, Jr., County Atty., James H. Lengel, Greenville, S. C., for intervenors.

## ORDER

HEMPHILL, District Judge.

The matter before the court for decision is the motion of the members of the Greenville County Council named as individual defendants in this action for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The motion extends to all causes of action which the plaintiff has sought to allege in his complaint and is based on the theory that the defendants enjoy legislative immunity from this suit in which the plaintiff seeks to impose personal liability upon them for actions taken by them in the performance of their legislative functions as elected members of the County Council of Greenville County, South Carolina.

The basic elements of this action are clearly set forth in the complaint, which alleges that the defendants acted in their official capacity to amend the Greenville County Zoning Ordinance, thereby changing the zoning classification of the plaintiff's property. He objects to the rezoning and seeks to recover monetary damages (including punitive damages) for diminution in value of his property which he says has resulted from the rezoning. Jurisdiction is alleged under 28 U.S.C. Sections 1331 and 1343 for causes of action pursuant to 42 U.S.C. Section 1983, the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the U. S. Constitution, and the similar provisions contained in Article 1, Section 5 of the South Carolina Constitution.

■ Zoning is a legislative function. This conclusion was expressed by the South Carolina Supreme Court in *Conway v. City of Greenville*, 254 S.C. 96, 173 S.E.2d 648 (1970), and the legislative nature of local zoning enactments also was recognized by the United States Supreme Court in *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). Thus, it is clear that a member of the Greenville County Council is legislating when he votes to enact an amendment to the existing Greenville County Zoning Ordinance. As such, he is no less a legislator than any member of the South Carolina Legislature or the Congress of the United States, and he is fully entitled to all of the safeguards and immunities which the common law traditionally has provided to forestall interference with the legislative functions of government. *Cf. Shannon Fredericksburg Motor Inn, Inc. v. Hicks*, 434 F.Supp. 803 (E.D.Va.1977).

There is nothing particularly novel in the plaintiff's effort here to recover monetary damages from local legislators/officials for allegedly unconstitutional actions. In *Ten-*

ney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the plaintiff alleged constitutional violations by members of an investigating committee of the California Legislature and invoked 8 U.S.C. § 43 (now 42 U.S.C. § 1983) to seek compensatory and punitive damages. The defendants had investigated and allegedly damaged the plaintiff through their activities on the Senate Fact Finding Committee on Un-American Activities, but the Supreme Court concluded without hesitation that the individual defendants and the legislative committee itself, which was named as a defendant, were not subject to liability under the Civil Rights Act when their actions were taken "in a field where legislators traditionally have power to act."

■ The basis of the Court's decision in Tenney v. Brandhove was the absolute immunity which the common law of England and the United States has long afforded legislators at all levels against civil liability for acts done within the sphere of their legislative activities. The enactment of 42 U.S.C. § 1983 and other portions of the Civil Rights Act did not, according to the holding in Tenney v. Brandhove, abrogate the legislative immunity which the Court found to exist at common law. That finding alone was dispositive in Tenney v. Brandhove, but the result there would not have been altered if the plaintiff had alleged (as is the case in this action) causes of action for constitutional violations independent of the Civil Rights Act. With its origins firmly based in the common law, the doctrine of legislative immunity is fully applicable either within or outside the scope of the sort of limited constitutional tort action sanctioned by 42 U.S.C. § 1983.

■ The Court's discussion of legislative immunity in Tenney v. Brandhove is succinct but complete, and it would be difficult indeed to improve upon the language of Justice Frankfurter's opinion. Two passages in particular are worthy of note in connection with this motion. In the first, the Court observed by quoting a member of the committee which translated the common law of legislative immunity into the Federal Constitution in the Speech and Debate Clause, Article I, Section 6:

In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of everyone, however powerful, to whom the exercise of that liberty may occasion offence. (341 U.S. at 373, 71 S.Ct. at 786, 95 L.Ed. at 1025).

Further, in Justice Frankfurter's words:

The claim of an unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives. The holding of this Court in Fletcher v. Peck, 6 Cranch 87, 130, 3 L.Ed. 162, that it was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned. (341 U.S. at 377, 71 S.Ct. at 788, 95 L.Ed. at 1027).

The applicability of the legislative immunity defense in South Carolina was not at issue in Tenney v. Brandhove, but the Court did make some enlightening observations about its availability here and in virtually all other states. After discussing the evolution of legislative immunity in the English common law, the Court observed in footnote 3 that the South Carolina Constitution of 1776 had protected the privilege by a general provision in Art. VII preserving English law. Although that provision no longer exists in the current South Carolina Constitution, the same purpose is served by § 14-1-50 of the S.C.Code which, provides that "All, and every part of, the common law of England, where it is not altered by the Code or inconsistent with the Constitu-

tion or laws of this State, is hereby continued in full force and effect in the same manner as before the adoption of this section." Thus, the holdings in *Tenney v. Brandhove* and in other decisions based on legislative immunity as it evolved from the common law of England are fully applicable to actions brought in any federal or state court of South Carolina alleging causes of action arising out of the constitutions or statutes of either the United States or the State of South Carolina.

It appears that the South Carolina Supreme Court has never had occasion to consider the doctrine of legislative immunity in a suit against legislators for actions taken in the performance of their legislative duties. The defendants have suggested, however, and this court agrees that the probable explanation for this lack of precedent is the virtually universal acceptance of the doctrine of legislative immunity which has prevented the consideration of this question at the appellate level in South Carolina. For example, reference to general authorities clearly indicates the immunity of legislators at all levels. *See, e. g.,* 63 Am.Jur.2d, *Public Officers and Employees* § 289 and 56 Am.Jur.2d, *Municipal Corporations,* § 146, which states "it is an elementary rule that members of a municipal council are not liable personally for their legislative acts." (citing, *inter alia, Shellburne, Inc. v. New Castle County,* 293 F.Supp. 237 (D.Del. 1968).

The *Shellburne* decision noted above merits closer examination because the facts and the legal issues before the district court there were so similar to those which exist in this case. The plaintiff Shellburne, Inc. raised constitutional objections to the New Castle County Council's rezoning of its property and alleged violations of the Civil Rights Act in seeking damages on the basis that rezoning had diminished the value of its land by a minimum of $200,000.00. The court did not hesitate to hold, however, that the doctrine of legislative immunity precluded the imposition of personal liability upon members of the County Council for their legislative acts in rezoning the plaintiff's property and based its decision primarily upon the authority of *Tenney v. Brandhove.*

In opposing the pending motion for judgment on the pleadings, the plaintiff has attempted to distinguish between the act of the Council members in voting to rezone his property, which is clearly a protected legislative activity, and their investigative activities prior to the vote, which the plaintiff has labeled "*ex parte* communications on the merits by members with property owners in the area . . . for the purpose of being influenced" and says are not protected within the scope of their legislative functions. This argument is not persuasive for at least two reasons. First, the plaintiff has sought monetary damages in this action for diminution in value of his property as the result of rezoning by the defendants, and it is only from their vote to amend the existing zoning ordinance, and not from any prior activities, that the alleged damages could have resulted. Second and more important is the fact that this court cannot envision any constitutional violation resulting from communications by elected officials with any of their constituents prior to reaching a decision on how to vote on a matter properly before them, no matter how abhorrent their views on the subject of zoning might be to the plaintiff. Moreover, it is clear from the decision in *Tenney v. Brandhove* that the claim of an unworthy purpose for legislative activity does not destroy the privilege of legislative immunity.

Based on the pleadings now before the Court, this case possesses no distinguishing characteristics which dictate a result different from that reached in *Shellburne* or, indeed, in *Tenney v. Brandhove.* The doctrine of legislative immunity has been justly and consistently applied by courts in England and in the United States for nearly three centuries, and in each case, the rationale underlying the doctrine has remained constant. In any democratic system, the will to serve of one who presents himself for public office must be tested daily by his submission to the scrutiny of the public, but no legislator can be expected to discharge his duties with the resolution

and dedication they require unless he is freed from the constant threat of legal action and potential monetary liability for each exercise of his legislative judgment. This court therefore concludes that the doctrine of legislative immunity is fully applicable to the facts of this case and requires that the motion of the individual defendants for judgment on the pleadings be granted.

The Clerk of Court therefore is instructed to enter judgment in this action in favor of C. Daniel Riddle, I. H. Gibson, Mike Fair, Melvin Pace, John L. Bauer, W. Bentley Hines, Johnnie M. Smith, W. Shannon Linning, Larry H. McCalla, Marshall L. Cason, J. Harlon Riggins, W. B. Bennett, Charles F. Styles, and Clyde E. Morgan, individually, against the plaintiff, Tom S. Bruce. Inasmuch as it is the conclusion of this Court that maintenance of this action against these persons only as members of the Greenville County Council is tantamount to a suit against the Council itself and can result only in liability on the part of Greenville County and not in personal liability for any Council members, it is not inconsistent with the doctrine of legislative immunity to allow the plaintiff to continue this action against the defendants in their official capacities and that, therefore, will be allowed.

AND IT IS SO ORDERED.