[No. 17245-0-I.   Division One.   June 8, 1987.]

ROBERT T. STANNIK, ET AL, *Appellants,* v. BELLINGHAM–WHATCOM COUNTY DISTRICT BOARD OF HEALTH, *Respondent.*

*Dennis M. Hindman, Michael K. Tasker,* and *James P. Thompson,* for appellants.

*Robert Sargeant* and *Eric L. Freise,* for respondent.

PEKELIS, J.—Robert and Barbara Stannik appeal from an order of summary judgment dismissing their negligence claim against the Bellingham–Whatcom County District Board of Health.

I

In May 1982, Victor Longoria sold his home in Bellingham, Washington, to Merrill Lynch Relocation Management, Inc. On May 21, an agent of the Bellingham–Whatcom County District Board of Health performed an inspection of the home's sewage disposal system at the request of Kelstrup Realty, Merrill Lynch's agent. The inspector, Janice Gedlund, filed a report which stated that the system was working satisfactorily on that date.

In January 1984, the Stanniks entered into an agreement to purchase the home, which in the meantime had remained unoccupied. Rainer Mortgage Company provided the financing. As was its usual practice before closing a home loan, Rainer requested the Board to perform an inspection of the sewage disposal system. In December 1983, an inspector was sent to the property, but was unable to perform the requested inspection because the ground

was frozen and the home was locked. Rainer was informed of this. Nonetheless, on the basis of the 1982 inspection report, Rainer elected to waive its customary inspection requirement and close the loan. Before the closing, the Stanniks were told by Rainer that the inspection had not been performed, but that the system had passed inspection in 1982.

The Stanniks occupied the home in February 1984, and a month or two later discovered raw sewage in an open ditch on their property. In July 1984, at the Stanniks' request, the Board sent an inspector to the Stanniks' home. The inspector, Al LaLiberte, determined that the system was not functioning satisfactorily. Mr. Stannik claims in his deposition that he was subsequently informed by LaLiberte and by a plumber he hired that there was no *septic* system on the property, but only a block holding tank from which sewage flows through a pipe into the ditch.

The Stanniks brought suit against the Board,[1] alleging that it failed to exercise reasonable care in the 1982 inspection. The trial court granted the Board's motion for summary judgment, dismissing the complaint. The court was of the opinion that, while the Board owed a duty of due care to the party who requested the 1982 inspection, that duty did not run to subsequent purchasers such as the Stanniks.

II

On an appeal from an order of summary judgment, the reviewing court engages in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider all facts submitted and all reasonable inferences therefrom

---

[1]The complaint also named Merrill Lynch as a defendant.

in the light most favorable to the nonmoving party, and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson,* 98 Wn.2d at 437.

### III

■ It is fundamental that in order for a cause of action for negligence to lie, the party charged with negligence must owe a duty of care to the one injured. *J & B Dev. Co. v. King Cy.,* 100 Wn.2d 299, 304, 669 P.2d 468, 41 A.L.R.4th 86 (1983). The "public duty doctrine" provides generally that for one to recover in tort from a governmental entity, it must be shown that the duty breached was owed to the injured person individually, and not merely to the public in general. *J & B,* 100 Wn.2d at 303; *see also Honcoop v. State,* 43 Wn. App. 300, 308–09, 716 P.2d 963 (1986). Thus, we must decide in this case whether the Board is merely under a general duty to the "nebulous public," or whether that duty has "focused" on the Stanniks. *See J & B,* 100 Wn.2d at 304.

### A

■ An individualized duty upon which liability can be founded exists where a statute or ordinance indicates a "clear intent" to identify and protect a "particular and circumscribed class of persons" of which the plaintiff is a member. *Halvorson v. Dahl,* 89 Wn.2d 673, 676, 574 P.2d 1190 (1978); *see also Honcoop,* 43 Wn. App. at 309. In *Halvorson,* the court held that the City of Seattle could be liable for neglecting to enforce certain provisions of its housing code because the code, in its declaration of purpose, described a particular class of buildings within the city and evidenced an intent to provide for the safety of "the occupants of such buildings". *Halvorson,* 89 Wn.2d at 676–77. On the other hand, a statute or ordinance which merely evidences an intent to protect "the public health and welfare" does not create the sort of individualized duty upon which liability can be founded. *See Honcoop,* 43 Wn. App. at 310–11; *see also Hartley v. State,* 103 Wn.2d 768,

770–71, 785, 698 P.2d 77 (1985); *Halvorson,* 89 Wn.2d at 677 & n.2.

In the case sub judice, the Stanniks can point to no legislative enactment upon which the Board's liability can be founded. At the heart of the Stanniks' negligence claim is their contention that at the time of the 1982 inspection, the sewage disposal system was not in compliance with the Department of Public Health's Sewage Control Rules and Regulations, and that the system would not have been approved but for the inspector's negligence. However, the Sewage Control Rules and Regulations were enacted in the interest of "public health, welfare and safety" in Whatcom County. This is precisely the sort of enactment which has been held not to create an actionable duty on the part of a governmental entity. *See Honcoop,* 43 Wn. App. at 310–11; *see also Hartley,* 103 Wn.2d at 770–71, 785; *Halvorson,* 89 Wn.2d at 677 & n.2.

## B

An individualized duty upon which liability may be based is also found where there exists between a governmental entity and an injured plaintiff a "special relationship" creating a duty to perform a mandated act for the benefit of a particular person or class of persons. *Campbell v. Bellevue,* 85 Wn.2d 1, 10, 530 P.2d 234 (1975); *see also Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 285, 669 P.2d 451, 39 A.L.R.4th 671 (1983); *Honcoop,* 43 Wn. App. at 311. Such a relationship arises where (1) there is some form of privity between the governmental entity and the injured plaintiff which sets the latter apart from the general public, and (2) there are assurances, either express or implied, which give rise to reliance on the part of the plaintiff. *See Chambers–Castanes,* 100 Wn.2d at 286; *J & B,* 100 Wn.2d at 306–07 (assurances need not be express); *see also Honcoop,* 43 Wn. App. at 312.

In some cases, the issuance of a permit, when coupled with an inspection, can establish a special relationship between the issuing agency and the party to whom the per-

mit is issued. *See J & B,* 100 Wn.2d at 306–07. In *J & B,* for example, a builder submitted a lot plan for approval by the County. Despite the fact that the planned construction was not in conformity with code requirements, the plan was approved and a building permit issued. Later, an inspection was performed and, despite the code violation, the construction was approved. Still later, the County recognized the code violation and suspended the permit it had previously issued. The Supreme Court found that a special relationship existed between the builder and the County, since (1) the builder had dealt directly with the County through its agents, and (2) the issuance of a building permit carries with it an implied assurance that the proposed structure is in compliance with applicable code provisions. *J & B,* 100 Wn.2d at 306–07. Therefore, the court held, the County owed the builder a duty to exercise reasonable care in issuing the permit. *J & B,* 100 Wn.2d at 307–08.

However, recent case law makes clear that whatever duty is owed to the party who requests the permit and inspection, that duty does not run to subsequent purchasers such as the Stanniks. In *Pierce v. Spokane Cy.,* 46 Wn. App. 171, 730 P.2d 82 (1986), this court held that the County's issuance of a permit to a builder did not create a special relationship between the County and a party who subsequently purchased a home from the builder. *Pierce,* 46 Wn. App. at 174. Similarly, in *Taylor v. Stevens Cy.,* 47 Wn. App. 134, 732 P.2d 517 (1987), we held that there was no privity, and hence no special relationship, between the County and a homeowner who purchased his home the day after the County issued a building permit to his predecessor, the seller. *Taylor,* 47 Wn. App. at 140–41.

In this case, the 1982 inspection was performed at the request of Merrill Lynch more than a year and a half before the Stanniks purchased their home. The Board had no contact with the Stanniks until well after the 1982 inspection, and made no assurances to them at any time. On these facts, we find that no special relationship was established between the Board and the Stanniks. *See Taylor,* 47 Wn.

App. at 140–41; *Pierce,* 46 Wn. App. at 171. Whatever duty the Board may have been under with respect to the 1982 inspection, that duty has not "focused" on the Stanniks. *See J & B,* 100 Wn.2d at 304–05.

C

Because we find that neither the "legislative intent" rule nor the "special relationship" rule is applicable to this case, we conclude that, as a matter of law, the Board owed no duty to the Stanniks arising out of the 1982 inspection. Therefore, the judgment of the trial court is affirmed.

SWANSON and GROSSE, JJ., concur.