Willie Macon PICKLE, Linda Pickle, Michael Cathcart, Mary Cathcart, Phillip Cassera and Majorie Cassera, Appellants (Plaintiffs),

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF PLATTE, a political subdivision of the State of Wyoming, Appellees (Defendants).

No. 87–101.

Supreme Court of Wyoming.

Nov. 10, 1988.

Bruce S. Asay of Kline, Buck & Asay, Cheyenne, for appellants.

Nicholas G. Kalokathis and David D. Uchner (argued) of Lathrop & Uchner, Cheyenne, for appellees.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and O'BRIEN, District Judge.

CARDINE, Chief Justice.

Appellants were forced to move out of their homes in the Colt Track Acres Subdivision in Platte County because their water and septic systems were inadequate. They sued the Board of County Commissioners of Platte County (Board) for negligent ap-

proval of the subdivision permit and negligent supervision of the subdividers. The district court entered summary judgment in favor of the Board, and the homeowners appeal, presenting the following issues: (1) whether the Board waived the defense of immunity; (2) whether the Board is entitled to immunity; (3) whether the summary judgment must be reversed because the record contains no explanation for the order entering summary judgment; and (4) whether the court erred by denying appellant's motion for summary judgment.

We reverse and remand.

## FACTS

In January 1977, Donald and Vernell Britton applied for a subdivision permit for a parcel of land located west of Wheatland, Wyoming. During the permitting process, various individuals and public entities raised concerns about the high water table and poor drainage at the subdivision site. In response to these concerns, the county sanitarian recommended to the county planner that "evapotranspirational" septic systems be required on the subdivision lots and that the water wells be cased, sealed and grouted above ground. The sanitarian provided the developers with specifications for the evapotranspiration system, and the County granted the subdivision permit. The septic systems were apparently developed according to the specifications provided by the county sanitarian.

Appellants experienced no problems with the water and septic systems until 1984, when it became evident that the systems were not working adequately. In September 1984, the Department of Environmental Quality issued a notice of violation to the Pickles, owners of one of the homes, which required them to stop using their sewage system because raw sewage was leaking from the evapotranspiration beds. The other appellants experienced similar prob-

lems, including structural problems with their homes caused by the high water table. Appellants petitioned the Board, requesting that they revoke the subdivision permits and take action to remedy the problems; but the Board declined to act. Appellants then filed a claim with the Board under W.S. 1–39–113. The Board still failed to remedy the problems, and appellants filed this action in the district court.

The Board moved for summary judgment on the grounds of governmental immunity; appellants moved for summary judgment on the issue of liability. The court entered summary judgment in favor of the Board. The court's rationale does not appear in the record.

## WAIVER OF IMMUNITY THROUGH FAILURE TO TIMELY ASSERT IT AS AN AFFIRMATIVE DEFENSE

The Board did not plead any affirmative defenses in its answer. Then, over a year after the complaint was filed, the Board raised the defense of governmental immunity in a motion to dismiss under Rule 12(b)(6), W.R.C.P., which they later converted to a motion for summary judgment. Appellants contend that the Board waived the defense of governmental immunity by failing to plead it in its answer as required by Rule 8(c), W.R.C.P.[1]

As a preliminary matter, we must determine whether governmental immunity is an "avoidance or affirmative defense" which may be waived under Rule 8(c) or whether the existence of governmental immunity creates a jurisdictional defect which cannot be waived and may be raised at any time. In this case, the question is complicated by the fact that two different types of governmental immunity are at issue. First, there is the question of whether the County enjoys common law "quasi-legislative" immunity from suit for its acts or omissions in

---

1. Rule 8(c), W.R.C.P., provides:
   "*In pleading to a preceding pleading,* a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of con-

sideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, *and any other matter constituting an avoidance or affirmative defense.*" (Emphasis added.)

approving the subdivision. Second, there is the question of whether the County has waived its tort immunity under the Wyoming Governmental Claims Act by purchasing liability insurance which covers appellants' claim.

■ Legislative immunity rests upon the premise that

"no legislator can be expected to discharge his duties with the resolution and dedication they require unless he is freed from the constant threat of legal action and potential monetary liability for each exercise of his legislative judgment." *Bruce v. Riddle*, 464 F.Supp. 745, 748-49 (D.S.C.1979).

The doctrine prevents the judiciary from invading the province of the legislature. Because it raises separation of powers considerations and limits the power of courts, we conclude that it is a jurisdictional bar which cannot be waived. The Board did not waive the issue of legislative or quasi-legislative immunity.

■ Immunity under the Wyoming Governmental Claims Act, in contrast, is immunity from liability, not immunity from suit. W.S. 1–39–102. Its purpose is to protect public revenues, not to protect government officials from the burden of defending lawsuits. The district courts have subject matter jurisdiction to hear claims filed under the act. W.S. 1–39–117. In *Texas Gulf Sulphur Company v. Robles*, Wyo., 511 P.2d 963, 965 (1973), we defined an affirmative defense as "a direct or implicit admission of plaintiff's claim and assertion of other facts which would defeat a right to recovery." Governmental immunity from tort liability falls within this definition. W.S. 1–39–104. We conclude that for pleading purposes under Rule 8(c), W.R. C.P., immunity under the Wyoming Governmental Claims Act is an "avoidance or affirmative defense." In the present case, it should have been pleaded by the Board in its answer.

■ The Board's failure to plead the defense, however, is not fatal. The question of whether an omitted affirmative defense may be raised for the first time by a motion for summary judgment is addressed in 2A Moore's Federal Practice ¶ 8.28 (1987). The author states:

"[T]here is a split in authority as to whether a defendant may, subsequent to filing an answer, move for summary judgment on the basis of an affirmative defense omitted from the answer. While some cases hold that an affirmative defense not raised in the answer is waived and, therefore, not available as a basis for a summary judgment motion, other holdings provide that, absent prejudice to plaintiff, an affirmative defense may be raised by a motion for summary judgment regardless of whether it was pleaded in the answer or not. The latter position is more in keeping with the general purpose of the Federal Rules to avoid decisions based on pleading technicalities rather than the merits of a case." (Footnotes omitted.)

We agree that the latter position is preferable to a mechanistic application of the waiver rule. The controlling consideration is whether the adverse party is prejudiced by the moving party's delay in raising the defense. Appellants have alleged no prejudice in this respect, and the record discloses none. We conclude that the trial court did not err in allowing the Board to raise the omitted defense of statutory immunity by a motion for summary judgment.

APPELLANTS' CLAIM

The Board argues that appellants' claim does not sound in tort. We reject this assertion. The thrust of appellants' claim, as we understand it, is that the Board acted negligently by failing to exercise reasonable care in processing and reviewing the subdivision application. As evidence of the Board's negligence, appellants claim that the Board failed to comply with W.S. 18–5–306(a)(iv), which states that the Board shall require written certification of a licensed Wyoming engineer that the proposed sewage disposal system is adequate and safe.

The elements of the tort of negligence are a duty and a violation of that duty proximately causing injury. *Beard v. Brown*, Wyo., 616 P.2d 726 (1980). The existence of a duty is a question to be

decided as a matter of law. *Caterpillar Tractor Company v. Donahue*, Wyo., 674 P.2d 1276 (1983). The court must decide whether, upon the facts in evidence,

> " 'such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court.' " *Id.* at 1280, quoting Prosser, Law of Torts § 37, p. 206 (4th ed. 1971).

Although there is no scientific formula for determining whether a duty to exercise care exists in a particular case, the following factors are relevant:

> "(1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved. *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 131 Cal. Rptr. 14, 551 P.2d 334, 342, 83 A.L.R.3d 1166 (1976)." *Gates v. Richardson*, Wyo., 719 P.2d 193, 196 (1986).

As we explained in *Gates*, the first two factors are rather vague and not often useful; in any event, they present no obstacle to the imposition of a duty in this case. It was clearly foreseeable that appellants could suffer injury if the Board allowed the subdivider to install an inadequate septic system, and the Board's acts or omissions in the subdivision review process were sufficiently close to the injury suffered by appellants. The Board has not suggested that plaintiffs suffered no injury. With respect to moral blame, the Board's purported failure to adequately process the subdivision application evokes something less than moral outrage. On the other hand, it is likely that future harm could be prevented by the imposition of a duty of care in this instance. The burden on the defendant is slight—a duty to act reasonably is surely not onerous and is commonly applied to a wide range of activities. The consequences to the community and the court system are difficult to predict; suffice it to say that we do not envision a great number of plaintiffs racing to the courts to file similar claims following the publication of this opinion. The availability, cost and prevalence of insurance are valid concerns, but in this case they are not compelling. As we explained below, the possibility of recovery in this case depends upon the existence of insurance.

In addition to the factors addressed above, courts look to the following additional factors when the defendant is a governmental entity: (1) the scope of the public entity's powers; (2) the role imposed on the public agency by law; (3) budget limitations; and (4) whether the enactment imposing the duty is designed to protect against the risk of a particular injury. 4 C. Sands and M. Libonati, Local Government Law § 27.13 at p. 27–93 (1982). In the present case, the subdivision review process was clearly within the scope of the Board's statutory power and authority. W.S. 18–5–301 provides: "The regulation and control of the subdivision of land in the unincorporated areas in each county is vested in the board of county commissioners of the county in which the land is located." The role imposed upon the Board is one which requires it to obtain specific information from subdivision applicants and, on the basis of this information, either approve or disapprove subdivision applications. W.S. 18–5–306 and 18–5–308. The Board has identified no budget limitations which would diminish its ability to properly process and review subdivision applications. Finally, it seems clear that the purpose behind the subdivision statutes is to protect against problems like those which occurred in this case.

■ We conclude that the Board owed appellants a duty to exercise reasonable care in processing and reviewing the subdivision application. We should emphasize that the Board's policy determinations are not at issue here; we merely hold that the Board may be liable for failing to exercise reasonable care in performing basic tasks, such as the gathering of information. Some of those tasks are contained in statutes, as in this case. If the relevant statute is violated, that fact may be evidence of a failure to exercise reasonable care. If reasonable care was not exercised, thereby causing injury, the tort of negligence is involved. Appellants' claim, therefore, sounds in tort.

### QUASI–LEGISLATIVE IMMUNITY

The Board contends that it is immune from suit under the common law rule which provides that a governmental body is not liable for acts or omissions in the exercise of legislative or quasi-legislative functions. When this court abrogated governmental immunity in *Oroz v. Board of County Commissioners of Carbon County*, Wyo., 575 P.2d 1155 (1978), we recognized the continued vitality of legislative immunity:

"This decision * * * is not to be interpreted as imposing liability upon a governmental body for acts or omissions in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions * * *." *Id.* at 1158.

The subsequent enactment of the Wyoming Governmental Claims Act did not affect this well-established common law doctrine. If the Board was acting in a legislative or quasi-legislative capacity when it approved the subdivision permit, it is immune from suit.

■ The rule of immunity for legislative or quasi-legislative action rests upon the principle that courts should not inhibit the legislative process by providing a forum for second guessing legislative policy decisions. The doctrine is available to local officials when they act in a legislative capacity. 2 S. Speiser, C. Krause, and A. Gans, American Law of Torts (1985). The Board asserts that its approval of the Colt Track Acres Subdivision was a quasi-legislative zoning decision. We disagree. While the enactment of a zoning ordinance or regulation is a legislative act, the conduct challenged in this case did not involve the adoption of legislation in any sense. Moreover, the alleged breach of duty did not occur in the determination of fundamental governmental policy. See Restatement, Second, Torts § 895(c) (1979). The duty to require an engineer's certification was purely an imperative administrative duty imposed by the legislature. The doctrine of quasi-legislative immunity does not apply.

### GOVERNMENTAL CLAIMS
### ACT IMMUNITY

The Wyoming Governmental Claims Act provides that a governmental entity and its public employees while acting within the scope of their duties are immune from liability for any tort except as provided in the act. W.S. 1–39–104. The act lists specific governmental activities to which immunity does not apply. W.S. 1–39–105 through 1–39–112. Although the governmental activities challenged in this case do not fall within any of these exceptions, the act further provides:

"If a governmental entity has insurance coverage either exceeding the limits of liability as stated in this section or covering liability which is not authorized by this act, the governmental entity's liability is extended to the coverage." W.S. 1–39–118(b)(i).

Relying on this provision, appellants contend that the Board waived its immunity by purchasing insurance which covers its liability in the present case.

■ Four insurance policies appear in the record. The district court apparently concluded that none of the policies provided coverage for appellants' claims. While this conclusion might be correct, the record, in its present state, is insufficient to support summary judgment on this basis. In our view, the insurance coverage question was not adequately addressed in the district court. In addition, the Board neither briefed nor argued the issue on appeal.

Instead, it urged us to affirm the district court solely on the ground of quasi-legislative immunity. We remand the case to the district court for a reasoned resolution of the insurance coverage issue and any other proceedings which may be necessary.

REVERSED AND REMANDED.

THOMAS, J., filed a specially concurring opinion.

O'BRIEN, District Judge, filed an opinion concurring in part and dissenting in part.

THOMAS, Justice, specially concurring.

Wyoming is both a "revelation" state [1] and an "evidence of negligence" state.[2] Neither label has any inherent significance, although both may enjoy a reputation for beauty depending upon the eye of the beholder. Neither would be universally acclaimed. It is difficult, though, to fathom a court which can subscribe to *Mostert v. CBL & Associates, Inc.*, 741 P.2d 1090 (Wyo.1987), and yet steadfastly cling to the "evidence of negligence" concept. *Short v. Spring Creek Ranch*, 731 P.2d 1195 (Wyo. 1987).

The majority has reached a result in this instance with which I am generally in accord. In my judgment, however, the product of that decision leaves with the district judge a necessity for holding a trial to determine the question of immunity. I am of the view that a more incisive analysis results in the same appropriate solution to the problem posed by this case, but it offers a prospect of avoiding a trial simply for the purpose of determining whether a standard of care was violated so that available insurance may avoid the defense of governmental immunity.

The majority adopts a standard of reasonable care and apparently suggests that one may consider a violation of the statutes in determining whether that standard of reasonable care has been violated. This, of course, is simply an application of the clas-

sic labeling "evidence of negligence" as distinguished from "negligence per se." Those labels do not really afford any precise analysis in any situation, however, and I suggest that they are historical relics that need to be re-examined.

We are resolving the issue in the context of a summary judgment. This court has said that no question of a "conflict of material facts" can exist in the absence of evidence establishing a standard of conduct or duty. Furthermore, the determination of the standard of care or duty is a matter of law and not within the province of the jury. *Maxted v. Pacific Car & Foundry Co.*, 527 P.2d 832 (Wyo.1974), followed in *Apperson v. Kay*, 546 P.2d 995 (Wyo.1976). In *Maxted v. Pacific Car & Foundry Co., supra,* this court quoted from W. Prosser, The Law of Torts § 37, at 205 (4th Ed.1971), to make the point that there first must be proof of facts that give rise to a duty or standard of conduct. As I understand the record in this case, the only facts which would give rise to a duty or standard of conduct are found in the provisions of the statute. As the majority notes, § 18–5–301, W.S.1977, vests the regulation and control of the subdivision of land in unincorporated areas in the county in the Board of County Commissioners. The majority opinion assumes that the statute creates a private cause of action in these appellants, and I agree that the provisions of § 18–5–312, W.S.1977, are sufficiently narrowing to justify that assumption. I am in accord that we have identified facts which give rise to a duty.

In the course of its discussion, the majority alludes to:

" * * * [T]he following additional factors when the defendant is a governmental entity: (1) the scope of the public entity's powers; (2) the role imposed on the public agency by law; (3) budget limitations; and (4) whether the enactment imposing the duty is designed to protect against the risk of a particular injury. 4 C.

---

1. *Mostert v. CBL & Associates,* 741 P.2d 1090 (Wyo.1987).

2. *Short v. Spring Creek Ranch, Inc.,* 731 P.2d 1195 (Wyo.1987) (special concurrences of Brown, C.J., and Urbigkit and Macy, JJ.).

Sands & M. Libonati, Local Government Law § 27.13 at p. 27–93 (1982)." Ante at 265.

The proposition that a statute may impose a duty upon a public officer, the violation of which can result in liability if it is a cause of injury, is not new or novel. See, e.g., *Oleszczuk v. State*, 124 Ariz. 373, 604 P.2d 637 (1979); *Powell v. Village of Mount Zion*, 88 Ill.App.3d 406, 43 Ill.Dec. 525, 410 N.E.2d 525 (1980); *Harvey v. Board of Commissioners of Wabash County*, 416 N.E.2d 1296 (Ind.App. 2 Dist. 1981); *Indiana State Highway Commission v. Rickert*, 412 N.E.2d 269 (Ind.App. 3 Dist.1980), *vacated by* 425 N.E.2d 620 (1981); *Howley v. Scott*, 123 Minn. 159, 143 N.W. 257 (1913). But see *Trianon Park Condominium Association, Inc. v. City of Hialeah*, 468 So.2d 912 (Fla.App. 3 Dist. 1985). It is interesting to note that the factors recognized by the several courts in finding a duty on the part of a public officer, which is created by a statute, are quite similar to those identified in the passage of the majority opinion quoted above. In particular, they focus upon the fourth factor set forth in the quoted passage, and there is also a recognized dichotomy between discretionary functions and ministerial functions as to which no discretion exists. This court discussed that distinction in *Oyler v. State*, 618 P.2d 1042 (Wyo. 1980).

Once it is recognized that the statute in this instance structures a duty on the part of the public officer owed to an individual or an identifiable class of individuals, the logic of the "evidence of negligence" rule breaks down. At this point, the proposition is that the statute structures a ministerial duty, sufficiently narrowed to create a cause of action in an individual or a class of individuals because the statute was designed to protect them. This is essential in the summary judgment context or the appellants must lose. Yet, the majority goes on to say that the statute may or may not create a duty because the failure to comply with it may be found not to breach the duty owed to the appellants. There is absolutely no question that the statute was not complied with. If the statute does not establish the standard of conduct manifesting a duty to the appellants, it would seem that the trial court correctly granted summary judgment. In this circumstance, the evidence of negligence rule simply begs the question. The rule which holds that the statute creates a minimum standard, the violation of which results in the presence of the first two elements of a tort action is preferable and should be followed.

The tenor of the majority opinion then is that the duty here is a duty to proceed as a reasonable county commissioner would under the same or similar circumstances. I am persuaded that the thrust of § 18–5–306, W.S.1977, in certain respects, is to create a minimum standard of care. In part, this statute provides:

"(a) The board shall require the following information to be submitted with each application for a subdivision permit:

\*   \*   \*   \*   \*   \*

"(iv) Written certification of a licensed Wyoming engineer certifying as to the adequacy and safety of the sewage disposal system proposed for the subdivision, including the adequacy of the proposed system in relation to the topography of the subdivision, the proposed population density, soil conditions and watersheds located on or draining into or over the proposed subdivision. If no public sewage disposal system is proposed by the subdivider, the words "NO PROPOSED PUBLIC SEWAGE DISPOSAL SYSTEM," in bold capital letters shall appear on all offers, solicitations, advertisements, contracts, agreements and plats relating to the subdivision; \* \* \*." Section 18–5–306(a)(iv), W.S.1977.

This is an apt way to say that no reasonable county commissioner would ever approve a subdivision application without that information. Simply put, the legislature has said that this is the minimum standard of care for a reasonable county commissioner.

I recognize that the majority is inhibited by the limitation of the labeling claimed by the concurring opinions in *Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195 (Wyo.

1987). My understanding of that opinion, *Distad v. Cuban,* 633 P.2d 167 (Wyo.1981), and the provisions of the Restatement (Second) of Torts (1965), which are alluded to in those opinions, is that the suggested rule does nothing more than recognize the authority of a legislative or regulatory body to articulate a minimum standard of care. I perceive that to be something quite different from a rule of "negligence per se," whatever that broad phrase may connote.

To reiterate, then, in this instance, I am satisfied that § 18–5–301, W.S.1977, and the following sections recognize an obligation owed by the Board of County Commissioners to the Pickles. Section 18–5–306(a)(iv), W.S.1977, provides a minimum requirement in order to honor that obligation. I understand that the record is clear that no written certification by a licensed Wyoming engineer, as required by the statute, was obtained. The parties do not argue otherwise. Given those circumstances, it would seem that a rational justification is present for concluding that the first two elements of the tort of negligence, duty and a violation of that duty, are present in this instance, and there is no genuine issue of material fact in that regard. The appellants, however, must still establish facts demonstrating the elements of proximate cause and their damages, but I believe those are the issues which the trial court should submit to the jury.

Acknowledging the right of the legislature to articulate a standard for all members of the community who are county commissioners, the breach of which is not permitted, and the conceded fact of deviation in this instance helps the trial court deal with the defense of immunity arising out of a claim of no insurance coverage. It would assist the trial court in deciding as a matter of law whether any of the insurance contracts offer coverage, and it will avoid the necessity of a trial to determine whether there is negligence before coverage, which avoids immunity, can be identified.

We live in a complicated and sophisticated society. The incidence of governmental regulation of many kinds of activities is proceeding at what might be described as a geometric rate. Since that is the direction taken in our society, it seems that it is essential to recognize the authority of a legislative or regulatory body to establish a minimum standard with which everyone is expected to comply. I even wonder, without offering any solution, whether the judicial branch of government honors the separation of powers doctrine found in Article 2 of the Constitution of the State of Wyoming if it attempts to deny the authority of the legislative branch of government to adopt statutes setting forth a standard for all members of the community from which they may not deviate without a determination that there has been a breach of the appropriate standard of conduct. The analysis from that premise serves as a vehicle for avoiding a prospect criticized in *Maxted v. Pacific Car & Foundry Co., supra,* letting the standard rest in the whim and personal views of the jurors. If the judicial branch insists that it is always up to the jury to consider whether a reasonable, prudent person would deviate from a statutory requirement, there really is no statutory duty susceptible of uniform enforcement.

It is noted in W. Prosser & W. Keeton, The Law of Torts § 36 at 221 (5th Ed.1984), that under federal law the question to be resolved is whether a private cause of action was implied in the enactment of a federal statute, which is perceived to be a question of legislative intent. As I initially noted, the court assumes an obligation giving rise to a cause of action in this instance which I think the statute justifies, even though the only facts and circumstances that are apparent are found in the statute. I believe that an analysis of the statute to determine whether it sets forth a minimum standard is substantially the same analysis that often occurs in the federal courts in determining whether there is an implied private cause of action. While such a rule might be undesirable for every enactment of a statute, ordinance, or regulation (see W. Prosser & W. Keeton, The Law of Torts, supra, § 36 at 231), the criteria suggested by Restatement (Second) of Torts, § 286, afford the adequate flexibility and do not seem to be a substantial departure

from the succinct statement of the four factors identified by the majority to be considered when the defendant is a governmental entity.

O'BRIEN, District Judge, concurring in part and dissenting in part.

I concur with that part of the court's opinion titled: "WAIVER OF IMMUNITY THROUGH FAILURE TO TIMELY ASSERT IT AS AN AFFIRMATIVE DEFENSE." I dissent from the remainder of the opinion which may make Platte County liable for another's negligence.

When the legislature enacted the Wyoming Governmental Claims Act (W.S. § 1–39–101, et seq.) in 1979, it intended only to waive immunity in certain instances; a "close-ended" waiver. *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 709 (Wyo.1987). The claims act does not create new forms of action nor does it impose new duties upon governmental entities. W.S. § 1–39–104(a). Indeed, proper analysis requires the court to inquire whether a duty of care exists before it undertakes to consider immunity issues. *Davidson v. City of Westminster,* 32 Cal.3d 197, 185 Cal.Rptr. 252, 254–5, 649 P.2d 894, 896 (1982). The majority holds that the statutes relating to real estate subdivisions, in particular W.S. § 18–5–306(a)(iv), impose a special tort duty upon the counties to superintend subdivision development. The statute imposes no such duty in this instance; and even if it did, the record discloses no breach affecting these plaintiffs.

A general duty to enforce statutes is one which the government owes to the general public. However, public entities and functionaries do not owe a duty *in tort* to individual members of the public unless: 1) there was a special relationship between the governmental body and those individuals [*Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166 (1976)]; or, 2) it is clearly the intent of the legislature to impose a tort duty for the benefit of the plaintiffs, irrespective of any special rela-

tionship [*Halvorson v. Dahl,* 89 Wash.2d 673, 574 P.2d 1190 (1978)].

The special relationship test has been applied in many jurisdictions to deal with cases seeking to establish liability against governmental entities based upon a general duty to provide:

1) police protection [*Davidson v. City of Westminster,* supra, 649 P.2d 894—no duty; *Chambers–Castanes v. King County,* 100 Wash.2d 275, 669 P.2d 451, 39 A.L.R.4th 671 (1983)—no general duty, special duty found],

2) fire protection [*Frye v. Clark County,* 97 Nev. 632, 637 P.2d 1215 (1981)—no duty],

3) health inspections [*Stannik v. Bellingham–Whatcom Bd. of Health,* 48 Wash.App. 160, 737 P.2d 1054 (1987)—no duty],

4) flood zone planning and authorization [*Office Park Corporation v. County of Onondaga,* 64 A.D.2d 252, 409 N.Y.S.2d 854 (1978)—no duty],

5) subdivision approval and permitting [*Cootey v. Sun Inv., Inc.,* 718 P.2d 1086 (Haw.1986)—no duty],

6) enforcement of building codes [*Taylor v. Stevens County,* 111 Wash.2d 159, 759 P.2d 447 (1988)—no duty],

7) careful issuance of special use permit [*Meaney v. Dodd,* 111 Wash.2d 174, 759 P.2d 455 (1988)—no duty], and

8) other government services (See cases collected at 38 A.L.R.4th 1194, 1197–1200 (1985)).

Most states use the special relationship test, but a few do not as they consider it merely a corollary of the sovereign immunity doctrine. The latter view is incorrect because the test is not peculiar to governmental entities, but a matter of general tort law. In *Davidson v. City of Westminster, supra,* 649 P.2d at 897, the court said:

As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation

exists between the actor and the other which gives the other a right to protection." (Rest.2d Torts (1965) § 315; *Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 751–752, 167 Cal.Rptr. 70, 614 P.2d 728; *Tarasoff v. Regents of University of California* (1976) 17 Cal. 3d 425, 131 Cal.Rptr. 14, 551 P.2d 334.)

Plaintiffs have not alleged, nor does the record disclose, facts which could support a special relationship between them and the Board of County Commissioners. To the contrary, plaintiffs had no contact with the Board during the relevant period of time. The application for the subdivision permit was filed in January 1977 and was issued on May 4, 1977 to the developers, Donald and Vernell Britton; not plaintiffs. The Brittons did not sell the lots until years later. The lot sales were as follows:

1) On May 7, 1980, Brittons sold a lot to people named McIntosh (later sold to plaintiffs Cassera).

2) On May 31, 1981, the Brittons sold a lot to plaintiffs Cathcart (the only plaintiffs who purchased from the developers).

3) On December 11, 1981, Brittons sold a lot to the Webers (later sold to plaintiffs Pickle).

4) On February 16, 1982, McIntoshes sold to Casseras.

5) On September 27, 1982, Webers sold to Pickles.

If the Board owed these defendants a duty of care, it came not from a course of conduct creating a special relationship but from a legislative intent to protect a class of persons of which they are members.

Whether the subdivision statutes create a tort duty to a class of persons must rest upon an analysis of legislative intent and public policy. I do not believe the legislature intended the result reached here, and there are sound policy reasons not to expand the duties owed by regulatory bodies to create potential tort liability for the political subdivisions of the state and perhaps the state itself. In *Cootey v. Sun Inv., Inc., supra,* 718 P.2d 1086, the Hawaii Supreme Court was faced with a case markedly similar to this one. In deciding that governmental entities responsible for permitting subdivisions did not owe a duty to neighbors of the subdivision, the court said [at 1090–91]:

The question of whether a special relationship exists is another way of asking whether a duty of care exists to a third party. *Seibel v. City and County of Honolulu,* 61 Haw. 253, 602 P.2d 532 (1979).

"[I]t should be recognized that 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Waugh v. University of Hawaii,* 63 Haw. 117, 135, 621 P.2d 957, 970 (1980) (quoting *Kelley v. Kokua Sales & Supply, Ltd.,* 56 Haw. [204] at 207, 532 P.2d [673] at 675 [1975]).

In determining whether there was a duty owed by the County to the Cooteys who suffered injury, our task is to balance the policy considerations supporting recovery by the injured party against those favoring a limitation of the County's liability. *First Insurance Co. of Hawaii v. International Harvester Co.,* 66 Haw. [185] at 189, 659 P.2d [64] at 67–68 [1983]; *Ajirogi v. State,* 59 Haw. 515, 527, 583 P.2d 980, 988 (1978); *Kelley v. Kokua Sales & Supply, Ltd.,* 56 Haw. at 207, 532 P.2d at 675.

"Government is not intended to be an insurer of all the dangers of modern life, despite its ever-increasing effort to protect its citizens from peril." *Lorshbough v. Township of Buzzle,* 258 N.W.2d 96, 102 (Minn.1977). Despite our expanding expectations of government action, *Ajirogi v. State,* 59 Haw. at 522, n. 3, 583 P.2d at 985, we do not hold that government is liable for all injuries sustained by private persons as a result of government activity, even though doing so would spread the losses over the largest possible base, Van Alstyne, Governmental Tort Liability: A Public Policy Prospectus, 10 UCLA L.Rev. 463, 469 (1963) (hereinafter Van Alstyne).

In deciding whether a duty exists or not, we must "determine how far it is

desirable and socially expedient to permit the loss distributing function of tort law to apply to governmental agencies, without thereby unduly interfering with the effective functioning of such agencies for their own socially approved ends." Van Alstyne, 10 UCLA L.Rev. at 469. Government entities are mandated by law to perform a variety of activities which have no counterpart in the voluntary activities of private persons. Van Alstyne, 10 UCLA L.Rev. at 468. Our system of separate but equal branches of government demands restraint on the part of the courts from reordering priorities and forcing reallocation of resources upon the other branches which make policy decisions in this regard. Comment, *A Unified Approach to State and Municipal Tort Liability in Washington,* 59 Wash.L.Rev. 533 (1984).

See also, *Taylor v. Stevens County, supra,* 759 P.2d at 452 where the Washington Supreme Court said:

> J & B Dev. Co. [*J & B Dev. Co. v. King Cy.,* 100 Wash.2d 299, 669 P.2d 468, 41 A.L.R.4th 86 (1983)], in effect, held that local government is under a legal duty to verify that a permit application and the construction of a building is in compliance with all applicable codes. The court, however, imposed this duty without evaluating relevant public policy considerations. We now engage in a weighing of public policy considerations. In doing so, we find no alternative but to overrule *J & B Dev. Co.*

After discussion of policy considerations, the Court concluded [at 453]:

> Finally, *J & B Dev. Co.* has caused local government to become guarantors of each and every construction project. *J & B Dev. Co.* has shifted the risk of erroneous permit issuance and inspections from individuals to local governments. * * * Requiring local government to indemnify an individual for losses resulting from the negligent administration of building codes imposes substantial costs on local

government with little or no corresponding benefit.[1]

The subdivision statutes are intended to promote orderly land development for the general welfare. Regulating subdivisions through a permit system is an effort to require developers to meet the responsibilities imposed upon them by the legislature. Nowhere do the subdivision statutes either state or clearly imply a legislative intent to create a right of action for damages against the county by virtue of the permitting process. The majority confounds the regulatory purpose by engrafting upon it risk-shifting and risk-spreading features. The remedies should be limited to those expressly provided in the statutes and under existing law. The statutes provide for civil (W.S. § 18-5-312) and criminal (W.S. § 18-5-314) sanctions for violations by subdividers. In addition, a civil remedy exists to force compliance with the statutes. Plaintiffs' complain that the Platte County Board of Commissioners refused to enforce the subdivision statutes against the subdivider. Since the Board's acts or refusals to act are ministerial duties, mandamus would lie (W.S. § 1-30-101, et seq.). Mandamus, not damages, is plaintiffs' remedy against the Board of County Commissioners.

These plaintiffs dealt with and presumably relied upon a builder to select a proper site for the structures erected and upon the developer to "exercise reasonable care to insure that the subdivided lots are suitable for construction of some type of ordinary, average dwelling house and * * * disclose * * * any condition which he knows or reasonably ought to know makes the subdivided lots unsuitable for such residential building." *Anderson v. Bauer,* 681 P.2d 1316, 1323 (Wyo.1984). If plaintiffs' trust was misplaced and a builder or developer was negligent, then that party, not the county, should be responsible for any resultant damages.

In its rush to make the county an insurer of proper subdivision development, this court has held that the Platte County

---

**1.** After five years, the Washington Supreme Court recognized the policy implications of its decision and confessed error. It is unfortunate that we are unable to learn from the experience of others.

Board of County Commissioners was obliged to enforce subdivision standards under the pain of civil liability. Not only is the premise flawed but the rationale rests on an assumption not supported in the record. Plaintiffs' complaints center on the Board's failure to obtain an engineer's certificate for the sewage disposal system as required by statute. Indeed, W.S. § 18–5–306(a)(iv) requires a licensed Wyoming engineer's certificate as to "the adequacy and safety of *the* sewage disposal *system* proposed for the subdivision." (Emphasis supplied.) But it goes on to provide: "If no *public* sewage disposal system is proposed by the subdivider, the words 'NO PROPOSED PUBLIC SEWAGE DISPOSAL SYSTEM,' in bold capital letters shall appear on all offers, solicitations, advertisements, contracts, agreements and plats relating to the subdivision." (Emphasis supplied.) "Public" is not defined in the subdivision statutes, but it is a word of common understanding to which ordinary meaning should be ascribed; it means "of or relating to business or community interests as opposed to private affairs." Webster's New Collegiate Dictionary, G. & C. Merriam Co. (1979). Applying the plain meaning of the word, the legislative intent seems clear enough—if a public [common] system is proposed, it must be certified, but if there is to be no public [common] system, a warning is required in lieu of certification.

If the legislative intent is followed, the subdivision statutes strike a nice balance between reasonable government regulation and undue government interference. When public systems beyond the control of any one individual landowner are contemplated, the statutes require they be certified. That, of course, would facilitate the eventual formation of an Improvement and Service District (W.S. § 18–12–101, et seq.) or annexation to a city or town. On the other hand, those who prefer to have individual water and/or sewer systems may do so. However, it necessarily follows that the right to choose implies responsibility for choices made.

In this case there was no sewage disposal *system.* Instead, the developer installed evapotranspirational septic beds on the individual lots. The plaintiffs' complaint alleges: "41. THAT the subdividers designed and installed evapotranspirational septic beds, approximately 60 feet by 60 feet in outside measure." It goes on: "42. THAT the said septic beds are not within design parameters currently in force and mandated by the Department of Environmental Quality of the State of Wyoming, and are of inadequate size and capacity." Plaintiffs also submitted an affidavit of Theodore Coyer, a licensed engineer, who stated: "Affiant has examined the attached copies of the Permits for Small Wastewater Facilities, for Lots 2, 3, and 4, Colt Tracks, which permits set forth the size of the evapotranspirational septic beds installed on Colt Track Acres * * *." Attached to the affidavit are three separate permits for three separate small wastewater facilities. Each is signed by Donald D. Britton as applicant, and they were approved in 1978.

During the permitting process, and now, the county apparently thought that certification was not required since no public facilities were proposed. In the deposition of J. Kenneth Kennedy, certified engineer [apparently the County Planner and/or Engineer], the following appears:

Q. Now, in some companion litigation, I know there is an affidavit from you on file where you state the opinion that where septic systems are involved this requirement [for an engineer's certificate] does not apply. Is that still your opinion?

A. I believe that to be true.

Q. What is the basis of your opinion on that matter? Is that just your reading of the statutes, or has some external authority led you to having that opinion?

A. It is my interpretation of the statute that way, but, also, to my knowledge the only time that we as a consulting engineer have certified to the stipulations of that paragraph you just read are with a public disposal system.

The county correctly interpreted the statute; warnings, not certifications, were required. These plaintiffs chose a subdivi-

sion without public water or sewer systems and relied upon the developer to provide adequate private systems. They now wish to shift to the county the responsibility for their choice and the possible negligence of a builder or the developers.[2] This court assists in that effort by creating remedies not contemplated in the statutes and unreasonably extending tort duties to instrumentalities of government. This decision sets the stage for insured cities and counties to be joined as litigants in every case involving a subdivision or building locations approved by government. It may be a costly error.

The judgment of the district court should have been affirmed.

2. The developers are apparently defendants in another civil action brought by these plaintiffs. In that action they blame the county sanitarian for the choice of the individual evapotranspirational systems. If, as they claim, the sanitarian undertook to set standards, make demands or give advice to the developers, there may have been a special relationship which would support county liability to the developer. Cf. *Rogers v. City of Toppenish,* 23 Wash.App. 554, 596 P.2d 1096 (1979) with *Stannik v. Bellingham–Whatcom Bd. of Health,* 48 Wash.App. 160, 737 P.2d 1054 (1987). But see, *Taylor v. Stevens County, supra,* 759 P.2d at 453 and *Meaney v. Dodd, supra,* 759 P.2d at 458.